**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

---

**CERTAIN UNDERWRITERS AT LLOYD'S,**
**LONDON c/o APOLLO UNDERWRITING LTD.**
**ONE BISHOPSGATE**
**LONDON  EC2N 3AQ**
**UNITED KINGDOM**

**and**

**G6 HOSPITALITY, LLC**
**4001 INTERNATIONAL PARKWAY**
**CARROLLTON, TX  75007**

       **Plaintiffs,**

    **v.**

**AUTOMATIC FIRE CONTROLS, INC.**
**8940 WEST 192ND STREET (SUITE M)**
**MOKENA, IL  60448**

**and**

**SUMMIT FIRE PROTECTION CO.**
**575 MINNEHAHA AVENUE WEST**
**ST PAUL, MN  55103**

       **Defendants.**

**CIVIL ACTION NO.:**

---

**COMPLAINT**

Plaintiffs, Certain Underwriters at Lloyd's, London c/o Apollo Underwriting Ltd., and

G6 Hospitality, LLC (collectively "Plaintiffs"), by and through undersigned counsel, state upon

information and belief by way of Complaint against Defendants, Automatic Fire Controls, Inc.,

and Summit Fire Protection Co. (collectively "Defendants"), as follows:

**PARTIES**

    1.     Plaintiff Certain Underwriters at Lloyd's, London c/o Apollo Underwriting Ltd.

("Lloyd's") is a group of (primarily United Kingdom-based) insurance underwriters with an interest in the policy at issue, i.e. designated PRPNA1900673.

2.      At all relevant times, Lloyd's was composed of the following interested parties who are all commercial entities engaged in the business of insurance, with their respective principal places of business as follows:

- Allied World Assurance Company – 27 Richmond Road, Pembroke HM 08, Bermuda;

- Apollo Underwriting Limited – One Bishopsgate, London, UK;

- Ascot Underwriting Limited – 20 Fenchurch Street, London, UK;

- Beazley Group 623/2623 – 22 Bishopsgate, London, UK;

- Nephila Syndicate Management – Walsingham House, 4th Fl., 35 Seething Lane, London, UK;

- Sompo International – 1st Fl., 2 Minster Court Mincing Lane, London, UK;

- Talbot Underwriting – 60 Threadneedle Street, London, UK;

- W.R. Berkley Syndicate Limited – 14th Fl., 52 Lime Street, London, UK.

3.      At all relevant times, Lloyd's was authorized to provide in Iowa the insurance described herein.

4.      At all relevant times, Lloyd's provided property (*inter alia*) insurance to Plaintiff G6 Hospitality, LLC ("G6") in connection with its business property at 7655 Office Plaza Drive North in West Des Moines, Iowa ("subject property") pursuant to a policy that was in full force and effect at all relevant times.

5.      In the wake of the incidents described below, as a result of claims made on said policy (which were paid pursuant thereto), Lloyd's became subrogated to certain recovery rights and interests of G6 for monies paid thereunder, including certain of the claims asserted in this action.

6.      For its part, G6 itself has claims relating to the incidents described herein that it asserts in tandem with those of Lloyd's.

7.      Upon information and belief, Defendant Automatic Fire Controls ("AFC") is a Illinois corporation with its principal place of business at the above-captioned address; at all relevant times, AFC was engaged in the business of, *inter alia*, the sale, design, installation, maintenance, and servicing of residential and commercial fire-suppression (i.e. sprinkler) systems.

8.      Upon information and belief, Defendant Summit Fire Protection Co. ("Summit") is a Minnesota corporation with its principal place of business at the above-captioned address; at all relevant times, Summit was engaged in the business of, *inter alia*, the sale, design, installation, maintenance, and servicing of residential and commercial fire-suppression (i.e. sprinkler) systems.

## JURISDICTION AND VENUE

9.      Jurisdiction is based on 28 U.S.C. §1332(a)(1) as this action involves a controversy between entities and/or citizens of different states/countries; moreover, the amount in controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).

10.     Venue is proper in this district based on 28 U.S.C. §1391(a) in that the events giving rise to this claim occurred within this district.

## STATEMENT OF FACTS

11.     Prior to November 12, 2019, G6 contracted with AFC to install, monitor, test, inspect, service, repair, and/or maintain the subject property's sprinkler system and all components thereof ("system").  See Exhibit "A" hereto, a true and correct copy of said contract, which is incorporated herewith.

12.     Upon information and belief, in or about 2019, AFC contracted with Summit to install, monitor, test, inspect, service, repair, and/or maintain the system.  Plaintiffs are not in

possession of said contract, but believe that Defendants are in possession thereof, or have ready access thereto; hence, Defendants are not prejudiced by Plaintiffs' inability to append a copy hereto.

13.     Prior to November 2019, Summit did undertake to install, monitor, test, inspect, service, repair, and/or maintain the system.

14.     On November 12, 2019, as a result of Summit's improper monitoring, testing, inspecting, servicing, repairing, and/or maintenance of the system, several of its pipes froze and burst; this resulted in water leaks that damaged the subject property.

15.     Following the damages that occurred on November 12, 2019, Summit did undertake to monitor, test, inspect, service, repair, and/or maintain said system.

16.     On January 17, 2020, as a result of Summit's improper monitoring, testing, inspecting, servicing, repairing, and/or maintenance of the systems, additional pipes froze and burst; this resulted in more water leaks that further damaged the subject property.

17.     As a direct and proximate result thereof, which was the consequence of Defendants' negligent acts and/or omissions (as are described more fully below), G6 sustained damage to the subject property, as well as the imposition of additional expenses, in an amount in excess of $1,000,000.00.

18.     By operation of payments Lloyd's made to G6 pursuant to the terms and condition of the above-described policy, Lloyd's became subrogated to the recovery claims asserted in this action; likewise, G6 itself suffered damages recovery on which it pursues in this action.

### COUNT I – NEGLIGENCE v. AFC

19.     Plaintiffs incorporate by reference the preceding paragraphs as though set forth at length here.

20.     The aforementioned damages were the direct and proximate result of the negligence and/or other unlawful conduct of AFC – including negligent acts and/or omissions as performed by and through their agents, employees, servants, and/or chosen subcontractors, acting within the course and scope of their employment and/or agency – more specifically described as follows:

(a)     failing to exercise reasonable care in the performance of their duties in connection with the system, including but not limited to negligently …

    (1)     failing to competently monitor, maintain, inspect, repair, and/or test the system;

    (2)     failing to ensure that all the system's pipes were properly drained after the system was flushed; and/or

    (3)     failing to identify and avoid – or at least alert G6 to – the potential danger of freeze due to foreseeably freezing temperatures in unheated space coupled with failing to drain sufficient water from the system.

(b)     failing to adequately instruct, supervise and/or train their servants, employees, subcontractors, and/or agents as to the proper ways to perform the tasks described in subparagraph (a) above;

(c)     failing to adequately warn G6 and others of the dangers resulting from the failure to exercise reasonable care as set forth in subparagraph (a) above;

(d)     failing to provide, establish and/or follow proper and adequate controls so as to ensure the proper performance of the tasks set forth in subparagraph (a) above;

(e)     failing to perform the tasks set forth in subparagraph (a) in conformity with prevailing industry and governmental specifications and standards;

(f)     failing to retain competent, qualified and/or able agents, employees, subcontractors, and/or servants to perform the tasks set forth in subparagraph (a) above; and/or

(g)     violating the standards of care prescribed by statutes, rules, regulations, ordinances, codes, and/or industry customs applicable to AFC's undertakings at the subject property.

21.     As a direct and proximate result of such negligent acts and/or omissions, G6's property was damaged and additional expenses were incurred in an amount in excess of $1,000,000.00; as described herein, Lloyd's became subrogated to recovery on the herein-asserted claims relating thereto; likewise, G6 itself suffered damages recovery on which it pursues in this

action.

**WHEREFORE**, Plaintiffs respectfully request judgment in their favor and against

AFC – jointly, severally, and/or in the alternative with Summit – in an amount in excess of

$1,000,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and

such other relief as the Court deems appropriate under the circumstances.

## COUNT II – BREACH OF CONTRACT v. AFC

22.     Plaintiffs repeat the allegations set forth in the prior paragraphs of this Complaint

as though they were set forth at length here.

23.     Based upon the contract existing between G6 and AFC, AFC expressly and/or

impliedly promised that the activities it undertook in connection with the work performed at the

subject property – including as pertained to the maintenance of system – would be done in a

good and workmanlike manner, consistent with the express and/or implied terms of said contract.

24.     Impliedly and/or expressly as expressed in said contract (or as imputed by law),

AFC was obligated to comply with all applicable federal, state and local laws, regulations and

ordinances, as well as all industry standards, customs and practices.

25.     Based upon the facts and allegations herein stated, AFC breached the above-

described contract.

26.     As a direct and proximate result of such contractual breach(es), G6 suffered the

aforementioned damages to its real property, as well as additional expenses, in an amount in excess

of $1,000,000.00.

27.     G6 performed all conditions precedent to recover based upon such contractual

breaches.

28.     As described herein, Lloyd's became subrogated to recovery on certain of the

herein-asserted claims relating to the above-described damages; likewise, G6 itself suffered damages, recovery on which it too pursues in this action.

**WHEREFORE**, Plaintiffs respectfully request judgment in their favor and against AFC – jointly, severally, and/or in the alternative with Summit – in an amount in excess of $1,000,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

### COUNT III – BREACH OF IMPLIED WARRANTIES v. AFC

29.     Plaintiffs repeat the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length here.

30.     In furtherance of the herein-described services performed, AFC impliedly warranted that all work performed would be done in a reasonably workmanlike manner, and/or with quality workmanship, so as to create a habitable property.

31.     Based upon the herein-described improper conduct by AFC (by and through servants, employees, subcontractors and/or agents as set forth above), AFC breached these warranties.

32.     G6 has performed all conditions precedent to recover based upon such warranty breaches.

33.     As a direct and proximate result of these warranty breaches, G6 suffered the herein-described damages to its property, as well as additional hardship and expenses, in an amount in excess of $1,000,000.00; to the extent these damages were paid pursuant to G6's above-described policy, Lloyd's became subrogated to recover thereon; likewise, G6 itself suffered damages recovery on which it pursues in this action.

**WHEREFORE**, Plaintiffs respectfully request judgment in their favor and against AFC – jointly, severally, and/or in the alternative with Summit – in an amount in excess of $1,000,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

## COUNT IV – NEGLIGENCE v. SUMMIT

34.     Plaintiffs repeat the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length here.

35.     Upon information and belief, AFC formed an agreement with Summit to have Summit install, monitor, test, inspect, service, repair, and/or maintain the system pursuant to a contract of which G6 was the intended third-party beneficiary.

36.     Thus, Summit owed G6 a duty of reasonable care to install, monitor, test, inspect, service, repair, and/or maintain the system.

37.     The aforementioned damages were the direct and proximate result of the negligence of Summit, including its negligent acts and/or omissions, as performed by and through its agents, employees, subcontractors, workmen, and/or servants, more specifically described as follows:

       a.   failing to exercise reasonable care in the performance of their duties in the installation, monitoring, testing, inspection, servicing, repairing, and/or maintenance of the system, but not limited to, negligently …

           i.   failing to competently install, monitor, test, inspect, service, repair, and/or maintain the system in a safe and appropriate manner;

          ii.   failing to ensure that proper techniques were employed, and applicable safety procedures followed;

        iii.   failing to properly monitor the work of all agents, servants, subcontractors, workmen and/or employees while installing, monitoring, testing, inspecting, servicing, repairing, and/or maintaining the system to ensure compliance with proper procedures.

b.  failing to adequately instruct, supervise and/or train servants, employees, subcontractors, workmen and agents as to the proper ways to perform the tasks set forth in subparagraph (a)(i.-iii.);

c.  failing to adequately warn G6 of the dangers resulting from the failure to exercise reasonable care as set forth in subparagraph (a)(i.-iii.), above;

d.  failing to provide, establish and/or follow proper and adequate controls so as to ensure the proper performance of the tasks set forth in subparagraph (a)(i.-iii.) above;

e.  failing to perform the tasks set forth in subparagraph (a)(i.-iii.) in conformity with prevailing industry and governmental specifications and standards;

f.  failing to retain competent, qualified and/or able agents, workmen, subcontractors, employees and/or servants to perform the tasks set forth in subparagraph (a)(i.-iii.) above; and/or

g.  violating the standards of care prescribed by statutes, rules, regulations, ordinances, codes, and/or industry customs applicable to Summit's work.

38.     As a direct and proximate result of such negligent acts and/or omissions, G6's property was damaged and additional expenses were incurred in an amount in excess of $1,000,000.00; as described herein, Lloyd's became subrogated to recovery on the herein-asserted claims relating thereto; likewise, G6 itself suffered damages recovery on which it pursues in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Summit – jointly, severally, and/or in the alternative with AFC – in an amount in excess of $1,000,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

### COUNT V – BREACH OF CONTRACT v. SUMMIT

39.     Plaintiffs repeat the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length here.

40.     Based upon the contract existing between Summit and AFC – of which G6 was the intended third-party beneficiary – Summit expressly and/or impliedly promised that the activities it undertook in connection with installing, monitoring, testing, inspecting, servicing, repairing, and/or maintaining the system would be done in a good and workmanlike manner, and/or with quality workmanship, suitable for the creation of a habitable property.

41.     Pursuant to the contract, Summit was impliedly and/or expressly obligated to comply with all applicable federal, state and local laws, regulations and ordinances, as well as all industry standards, customs and practices.

42.     Based upon the facts and allegations stated herein, Summit breached the contract.

43.     G6 performed all conditions precedent to recover based upon such breach(es).

44.     As a direct and proximate result of such contractual breaches, G6's property was damaged and additional expenses were incurred in an amount in excess of $1,000,000.00; as described herein, Lloyd's became subrogated to recovery on the herein-asserted claims relating thereto; likewise, G6 itself suffered damages recovery on which it pursues in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Summit – jointly, severally, and/or in the alternative with AFC – in an amount in excess of $1,000,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

## COUNT VI – BREACH OF IMPLIED WARRANTIES v. SUMMIT

45.     Plaintiffs repeat the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length here.

46.     In furtherance of the above-described services performed, Summit impliedly warranted that all work performed would be done in a reasonably workmanlike manner, and/or with quality workmanship, so as to create a habitable property.

47.     Based upon the above-described improper conduct by Summit (by and through servants, employees, workmen, subcontractors and/or agents as set forth above), Summit breached these warranties.

48.     G6 performed all conditions precedent to recover based upon such warranty breaches.

49.     As a direct and proximate result of such warranty breaches, G6's property was damaged and additional expenses were incurred in an amount in excess of $1,000,000.00; as described herein, Lloyd's became subrogated to recovery on the herein-asserted claims relating thereto; likewise, G6 itself suffered damages recovery on which it pursues in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Summit – jointly, severally, and/or in the alternative with AFC – in an amount in excess of $1,000,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

**PATTERSON LAW FIRM, L.L.P.**
505 5th Avenue, Suite 729
Des Moines, IA  50309
Phone:  515-283-2147
FAX:     515-283-1002
E-mail:   jmiller@pattersonfirm.com

By:   */s/  Jason W. Miller*
            Jason W. Miller

Dated: April 25, 2022.